# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CORY GILMORE,**

Petitioner,

**Case No. 08-C-413**

**v.**

**WILLIAM POLLARD,**
Warden, Green Bay Correctional Institution,

Respondent.

---

# DECISION AND ORDER

---

On May 12, 2008, the petitioner, Cory Gilmore ("Gilmore"), filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his confinement at Green Bay Correctional Institution, Green Bay, Wisconsin. Respondent Warden William Pollard recognized that Gilmore's petition was timely filed pursuant to 28 U.S.C. § 2244(d)(1)(A). On February 9, 1996, a jury in Milwaukee County found Gilmore guilty of two counts of armed robbery, one count of aggravated battery and one count of substantial battery all as party to a crime. Gilmore is serving a 54-year prison sentence, which was imposed on April 15, 1996. Gilmore contends that his conviction and sentence violate the Constitution.

## FACTUAL AND PROCEDURAL BACKGROUND

Gilmore and his co-defendant Jonathan Gils ("Gils") were charged in a criminal complaint filed on October 31, 1995. The allegations, later amended, concerned two armed robberies and related aggravated and substantial battery allegations, all as party to a crime. The charges arose from Gilmore and Gil's participation in two separate armed robberies on October 16, 1995, and October 27, 1995, at Jim's Beer & Liquor, located at 3833 North Teutonia Avenue, in the City of Milwaukee. The victim of the October 27, 1995, incident was the owner of Jim's Beer & Liquor, Claudino Claudio ("Claudino"), while the victim of the October 16, 1995, incident was his son, James Claudio ("James"). In the first robbery, James was beaten with a liquor bottle requiring seven stitches. In the second robbery, Claudino sustained injuries to his head after being beaten with liquor bottles and required more than 150 stitches.

Gilmore and Gils were tried together on February 6, 1996, through February 9, 1996. Both Claudino and James testified at the trial and identified both Gilmore and Gils. Contrary to counsel's advice, and after being provided additional time to consider his position, Gilmore chose to testify. On February 9, 1996, the jury found both Gilmore and Gils guilty of all four counts. On April 15, 1996, the trial court sentenced Gilmore to fifty-four years in prison.

Gilmore proceeded *pro se* on his first direct appeal because his postconviction counsel advised him that he did not have any meritorious claims. Gilmore filed a direct appeal which was dismissed. In October 2001, pursuant to a federal writ of habeas corpus and decision by

Case 2:08-cv-00413-RTR   Filed 08/04/09   Page 2 of 23   Document 42

the Wisconsin Court of Appeals, Gilmore's appeal rights were reinstated and he was appointed new postconviction counsel. Gilmore's postconviction counsel filed a no merit brief and Gilmore filed a response. The court of appeals determined that "[b]ased upon [its] independent review of the record as mandated by *Anders v. California*, 386 U.S. 738 (1967), . . . the record reveals no issue of arguable merit." *State v. Gilmore*, No. 2002AP2511-CRNM, unpublished slip op. (Wis. Ct. App. September 16, 2003) (Petition, Ex. 2 at 2). The court of appeals relieved Gilmore's postconviction counsel of further obligation to represent him and "summarily affirm[ed] the judgment and postconviction order." *Id.* Gilmore has sought additional postconviction relief in the circuit court and appellate court of Wisconsin. All of Gilmore's requests have been denied.

On May 12, 2008, Gilmore filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 along with a motion for leave to proceed in forma pauperis. This Court initially dismissed the case without prejudice because the Court believed that Gilmore's account statement showed that Gilmore was financially capable of paying the $5.00 filing fee. Gilmore successfully appealed to the Court of Appeals for the Seventh Circuit, which vacated the judgment of this Court and remanded for a reconsideration of Gilmore's actual financial situation. On March 17, 2009, this Court issued an order requiring Gilmore to complete a petition and affidavit to proceed without prepayment of fees and or costs which was enclosed with the Court's order. Gilmore requested an extension of time to pay the $5.00 fee for commencing this action or, alternatively, an enlargement of time to file his

affidavit of indigency. Gilmore's request for an extension was granted. On April 27, 2009, Gilmore paid the $5.00 filing fee.

Gilmore's petition lists seven grounds for relief: (1) the denial of his Sixth Amendment right to be informed of the nature and cause of the accusations against him; (2) the denial of his Sixth Amendment right to the effective assistance of counsel; (3) the denial of his Fourteenth Amendment right to due process by the State's knowing presentation of false testimony; (4) the denial of his Fourteenth Amendment right to due process because he was sentenced based on inaccurate information; (5) the denial of due process by the seven year delay in the final adjudication of his direct appeal; and (6) and (7) the denial of his Sixth Amendment right to the effective assistance of appellate counsel. On May 15, 2009, this Court issued a Decision and Order determining that Gilmore's petition raised cognizable constitutional issues and that Gilmore appeared to have exhausted available state court remedies. The Court ordered the Respondent to answer the petition. On June 16, 2009, the Respondent filed its Answer.

On July 27, 2009, Gilmore filed a motion to amend petition for writ of habeas corpus noting that the Court's Rule 4 Order identified four grounds for relief instead of the additional three grounds for relief raised in Gilmore's attachment to his petition. Gilmore is correct that his petition identifies seven grounds for relief which will be addressed in this decision. The Court clarifies that the Court has Gilmore's petition in its entirety and Gilmore's petition was properly filed and docketed on May 12, 2008. The respondent answered all of Gilmore's challenges and contends that Gilmore is unable to prove the

-4-

Wisconsin Court of Appeals resolved those challenges in a manner that it contrary to, or involves an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

**APPLICABLE LAW**

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Guest v. McCann*, 474 F.3d 926, 931 (7th Cir. 2007). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") greatly restricts federal habeas review of state court criminal convictions. The United States Supreme Court summarized the narrow scope of federal habeas corpus review of state court judgments as follows:

> AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra*, at 405, 120 S.Ct. 1495; *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (*per curiam*). A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra*, at 405, 120 S.Ct. 1495; *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*).

*Brown v. Payton*, 544 U.S. 133, 141 (2005).

Case 2:08-cv-00413-RTR   Filed 08/04/09   Page 5 of 23   Document 42

Thus, "contrary to" and "unreasonable application" have independent meaning.  *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).  The question is whether the state court's application of clearly established federal law is objectively unreasonable; an unreasonable application is different from an incorrect one.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).

> An incorrect application of clearly established federal law is not necessarily an unreasonable one.  *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001).  As such, a federal court cannot substitute its independent judgment as to the correct outcome; rather, it must determine that a state court decision was both incorrect *and* unreasonable before it can issue a writ of habeas corpus.  *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

*Davis v. Litscher*, 290 F.3d 943, 946 (7th Cir. 2002).

A state court decision "'minimally consistent with the facts and circumstances of the case'" is not unreasonable.  *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (citation omitted).  A court unreasonably applies federal law if it makes a determination "'lying well outside the boundaries of permissible differences of opinion.'"  *Id.* (citation omitted).  Finally, a state court's factual determinations are presumed correct and are not "'unreasonable,' unless a petitioner can show otherwise by clear and convincing evidence."  *Id.* (and cases cited therein); 28 U.S.C. § 2254(e)(1).

Further, the Court may not grant federal habeas relief unless it determines there was "clearly established Federal law" as determined by the Supreme Court at the time of the state court ruling in question.  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  "Clearly established federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Id.*  This includes the

-6-

holdings of Supreme Court decisions as well as "legal principles derived from th[ose] holdings." *Samuel v. Frank*, 525 F.3d 566, 569 (7th Cir. 2008).

## DISCUSSION

Gilmore's first challenge to his conviction is that he was denied the right to be informed of the nature and cause of the accusations against him in violation of the Sixth Amendment to the United States Constitution.[1] Gilmore contends that count one of the complaint and information initially charged Gilmore with attempted armed robbery of Claudino. Gilmore contends that relevant portions of the complaint stated that Claudino was unsure whether Gilmore and Gils were able to take any money with them when they fled. Claudino did state that the defendants took his handgun. Gilmore argues that at the preliminary hearing, Claudino testified that he discovered $1150 missing and did not know who took the money but inferred that Gils took it. After the preliminary hearing, count one was amended from attempted armed robbery to armed robbery. Gilmore contends that the amended information did not describe the property taken from Claudino and an amended complaint was not filed.

Gilmore further contends that prior to trial, Gilmore moved to dismiss count one arguing an armed robbery was not stated in the complaint. The circuit court denied the motion ruling that the amended information was based on the facts and circumstances as

---

[1]The Sixth Amendment to the United States Constitution provides as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

-7-

were testified to at the preliminary hearing. At trial, Claudino testified that he saw Gilmore and Gils take his money out of a brandy box. Claudino testified that he did not remember telling any police officer that he did not know whether any money was taken. Testimony was presented that Claudino told the police officer he did not know how much money was taken. Gilmore basically notes discrepancies between statements by Claudino as set forth in the complaint and those at trial. At trial, Gilmore testified and admitted taking Claudino's gun. Gilmore testified that he acted in self-defense when he took Claudino's gun. After Gilmore testified, the prosecutor argued in closing that Gilmore was guilty of armed robbery because he took Claudino's gun regardless of whether any money was taken from Claudino. Gilmore asserts that the prosecutor did not inform Gilmore that the taking of Claudino's gun also constituted the taking of property for an armed robbery charge.

On direct appeal, this issue was raised by Gilmore in response to the no merit report. The Wisconsin Court of Appeals discussed that following the preliminary hearing, defense counsel acknowledged receipt of the information and waived its formal reading. Before trial, defense counsel waived reading of the amended information. The record failed to reveal that this issue was raised at trial. The court of appeals further noted that Gilmore testified at trial in his own defense, contrary to defense counsel's advice, and that his testimony exhibited no confusion regarding the nature of the charges or cause of the accusations. The court of appeals determined that this issue lacked arguable merit. *State v. Gilmore*, No. 2002AP2511-CRNM, unpublished slip op. (Wis. Ct. App. September 16, 2003) (Petition, Ex. 2 at 5).

Case 2:08-cv-00413-RTR   Filed 08/04/09   Page 8 of 23   Document 42

The Sixth Amendment right to be informed of the nature and cause of the accusation is a right basic to our adversary system of criminal justice and is part of the due proces of law that is guaranteed to all criminal defendants by the Fourteenth Amendment. *See Faretta v. California*, 422 U.S. 806, 818 (1975). An indictment is constitutionally sufficient if it contains the elements of the offense intended to be charged, sufficiently apprises the accused of what he must be prepared to meet, and enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962). In this case, the amended information[2] contained the essential elements of the offense of armed robbery, set forth the date and location of the offense, and gave the name of the victim. The amended information was more than sufficient to inform Gilmore of the nature and cause of the accusation in compliance with the requirements of the Sixth Amendment. The Constitution does not require that the property taken in an armed robbery be particularly identified in the information. The fact remains that Gilmore, against the advice of his attorney, took the stand and testified that he took Claudino's gun in self defense. Gilmore's testimony, which he acknowledges in his petition, placed Gilmore at the crime scene and implicated him in the armed robbery. The court of appeals did not resolve this challenge in a manner that is contrary to, or involves an

---

[2]The Amended Information on count one reads as follows: "Count 01: Armed Robbery – Party To A Crime. On October 27, 1995, at 3833 North Teutonia Avenue, City of Milwaukee, as parties to a crime, with intent to steal, did and by the use or threat or use of a dangerous weapon, take property from the presence of Claudino Claudio, the owner, by using force against the person of the owner with intent thereby to overcome the said owner's physical resistance or physical power of resistance to the taking and carrying away of said property contrary to Wisconsin Statutes section 943.32(1)(a) & (2) and 939.05." Answer to Petition for Writ of Habeas Corpus, Ex. B at 201.

-9-

unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *Muth v. Frank*, 412 F.3d 808, 813-14 (7th Cir. 2005).

Gilmore next challenge is that he was denied the effective assistance of counsel. Gilmore makes numerous arguments for how his trial counsel was ineffective. Gilmore argues that his trial counsel failed to call an assistant district attorney as a witness to introduce Claudino's allegedly inconsistent statement that he was not sure whether any money was taken. Gilmore argues that trial counsel failed to effectively cross examine Claudino and introduce his prior inconsistent statements to impeach Claudino. Gilmore further argues that his trial counsel failed to investigate and subpoena an allegedly material witness who failed to identify Gilmore in a line-up. Gilmore further argues that although his attorney moved to suppress the line-up evidence on the grounds that the participants were not the same height or weight, his attorney did not suppress the lineup evidence on the grounds that the line-up was conducted outside the presence of counsel. Gilmore states that his defense was that Claudino was lying about the money taken and that Gilmore acted in self-defense. Gilmore testified that there was no money taken and that Claudino initiated the attack by pulling a gun on Gilmore.

The Sixth Amendment, previously set forth, guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). An ineffective assistance of counsel claim is governed by a two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

-10-

*Strickland* is clearly established federal law, as determined by the Supreme Court of the United States. *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). Pursuant to *Strickland*, a petitioner "must show that counsel's performance was deficient . . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. The first element requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In considering the first element, the Supreme Court has instructed courts not to engage in "the distorting effects of hindsight," and to "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In addition, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second component, a petitioner "must show that there is reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

If a defendant is unable to make a sufficient showing on either component of the *Strickland* standard, the court need not consider the other component. *Id.* at 697. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. Moreover, "[i]neffective assistance of counsel is a single ground for relief no matter how

-11-

many failings the lawyer may have displayed." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005). Thus, performance of defendant's counsel will be assessed as a whole, and "it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." *Id.*

The Wisconsin Court of Appeals considered whether Gilmore received the ineffective assistance of counsel and held that "[o]ur independent view of the record fails to disclose any arguable basis to conclude that counsel's performance was deficient or that Gilmore suffered any prejudice due to counsel's ineffective assistance." *Gilmore*, Petition, Ex 2 at 4. The court of appeals noted that the record established that defense counsel used prior inconsistent statements for impeachment purposes and the record contained physical evidence, testimony from a number of witnesses, and parts of Gilmore's own testimony that supported the verdict. The court of appeals held that "[b]ecause of the evidence supporting the verdict, we conclude that the alleged deficiencies fail to affect the result absent a showing of prejudice." *Id.* at 7.

In order to overturn his presumptively valid state court conviction in federal court, Gilmore must prove the Wisconsin courts resolved his ineffective assistance challenge in a manner that is contrary to, or involves an unreasonable application of, the principles of *Strickland v. Washington*. *See Bell*, 535 U.S. at 693-94. Gilmore must prove the court of appeals' resolution of his *Strickland* challenge was both incorrect and unreasonable. *Id.* at 698-99. The bar for establishing that the state court's application of the *Strickland* standard was "unreasonable," is a high one. *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003). If the state courts took the constitutional standard seriously and produced an answer within

-12-

the range of defensible positions, the state court decision will be upheld. *Mendiola v. Schomig*, 224 F.3d 589, 591-92 (7th Cir. 2000). In a habeas action, only those "who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

In this case, the court of appeals held that because of the evidence supporting the verdict, Gilmore failed to demonstrate prejudice. At trial, both James and Claudino testified and identified Gilmore as one of the assailants. In addition to this evidence, there was testimony from other witnesses identifying Gilmore and physical evidence linking Gilmore to the crimes was recovered. Gilmore's own testimony placed him at the liquor store on October 27, 1995, but he claimed self-defense, which the jury opted not to believe given the guilty verdicts. Gilmore does not rebut these findings of fact. Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254. Therefore, the court of appeals conclusion is reasonable given this overwhelming evidence of guilt.

The record in this case shows that the Wisconsin Court of Appeals reasonably applied *Strickland* in assessing Gilmore's claim that he was denied his Sixth Amendment right to the effective assistance of counsel. Gilmore cannot demonstrate that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Gilmore cannot demonstrate that he was deprived of a fair trial whose result is reliable. *Id.* at 687. The court of appeals did not resolve Gilmore's challenge to the effectiveness of trial counsel in a manner that is contrary to, or involves an unreasonable

-13-

application of, the principles of *Strickland*. Gilmore is not entitled to habeas relief on this claim.

Gilmore asserts in his third ground for relief that the prosecutor knowingly presented false testimony. Gilmore argues that at trial, Claudino testified that he received injuries that required 210 stitches. Gilmore contends that medical records demonstrated that Claudino received 150 stitches. Gilmore further contends that the medical records were not introduced into evidence nor turned over to Gilmore prior to trial. Gilmore argues that the state court did not conduct an evidentiary hearing to determine how many stitches Claudino received and that under Wis. Stat. § 940.19(5), the seriousness of Claudio's injuries determines the degree of battery committed.

A prosecutor's knowing use of false testimony violates the Constitution's due process clause. *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001). In order to set aside a verdict and order a new trial, a defendant must establish that (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Id*. A witness's testimony need not have been "knowingly false (and hence prejury)" to succeed on such a claim, rather, a prosecutor's knowing use of false testimony is enough to infringe upon a defendant's right to due process. *Id.* (quoting *United States v. Boyd*, 55 F.3d 239, 243 (7th Cir. 1995)).

The Wisconsin Court of Appeals addressed Gilmore's argument and stated:

> The record does not conclusively establish that the victim's testimony about the 210 stitches was erroneous. Rather, the record suggests that such

-14-

testimony was true. The medical report Gilmore references indicates that the victim received *greater than* 150 stitches, not *exactly* 150 stitches. Thus, Gilmore has failed to demonstrate that any false testimony needed to be corrected to preserve his due process rights. The record demonstrates that Gilmore's actions caused the victim to need a substantial amount of stitches. Raising the discrepancy between the victim's testimony about the specific number of stitches and the medical record reference about the amount of stitches would not have been meritorious. Therefore, postconviction counsel's failure to raise this issue cannot constitute ineffective assistance.

*State v. Gilmore*, No. 2005AP828, unpublished slip op. (Wis. Ct. App. July 18, 2006) (Petition, Ex. 5 at 5) (emphasis in original).

In this case, the evidence established that Claudino sustained injuries to his head, which required more than 150 stitches. Answer, Ex. C, App. 5. Testimony that Claudino required 210 stitches was not false. Therefore, the court of appeals' finding that false testimony was not presented was not objectively unreasonable. The nature of the injuries sustained by Claudino clearly established reasonable grounds for the conviction of aggravated battery.[3] Moreover, the Court opines that to have challenged Claudino on the number of stitches he received, whether it was 150 or 200, would have been a tactical error on the part of Gilmore's attorney that would have served to emphasize to the jury the horrific beating inflicted on Claudino by Gilmore. This argument is patently frivolous.

Gilmore's fourth ground for relief is that he was denied due process when the state sentenced him relying on inaccurate information. Gilmore contends that the state court

---

[3]At the time of Gilmore's crime, the elements of aggravated battery were: (1) the defendant caused great bodily harm to another person; and (2) the defendant intended to cause substantial bodily harm or great bodily harm. Wis. Stat. § 940.19(5). The elements of great bodily harm are defined as a bodily injury which (1) creates a substantial risk of death; or (2) causes serious permanent disfigurement; or (3) causes a permanent or protracted loss or impairment of the function of any bodily member or organ; or (4) causes other serious bodily injury. Wis. Stat. 939.22(14).

-15-

sentenced Gilmore based, in part, on information that Gilmore had twice been sentenced to one year confinement as a juvenile. Gilmore contends this information is inaccurate. Gilmore states that he was sentenced to one year confinement on one occasion for multiple juvenile offenses. Gilmore also contends that the state court relied on inaccurate information that a gun was used against Claudino. Gilmore contends that the prosecutor misrepresented to the court that a gun was pointed at Claudino, even though there was no evidence presented at trial that a gun was used.

The court of appeals determined this issue to be procedurally barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994). *State v. Gilmore*, 2005AP2671-CR unpublished slip op. (July 24, 2007) (Petition, Ex. 8, at 5). "If the state court declined to reach the merits of the petitioner's claim because of a procedural default, that default must constitute an independent and adequate state-law ground in order to be a bar to federal habeas relief." *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). Whether the ground is independent depends on state law and whether it is adequate depends on federal law. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997). A procedural default constitutes an independent state law ground if "the last state court to consider the question actually relied on procedural default as the basis for its decision." *Braun*, 227 F.3d at 912 (citing *Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993)). The state court must have "'clearly and expressly' relied on the procedural default as the basis of its ruling." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).

"To be an adequate ground of decision, the state's procedural rule must be both firmly established and regularly followed." *Id.* (quotations omitted). It must be applied in a "consistent and principled way; it cannot be employed infrequently, unexpectedly, or freakishly." *Id.* (quotations omitted). Moreover, "the state rule of practice must have been in place, and enforced, 'by the time as of which it is to be applied.'" *Liegakos*, 106 F.3d at 1385 (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)). The disposition of the last state court to issue an opinion determines whether the state has invoked a ground of forfeiture. *Id.* at 1385. The last state court to consider the issue, the Wisconsin Court of Appeals, relied on procedural default as the basis of its decision not to address Gilmore's argument that he was sentenced based on inaccurate information.

Nevertheless, federal review of the petitioner's claim may still be available "if the petitioner can show cause and prejudice for [his] failure to exhaust [his] claims, or if a failure to review them on these procedural grounds would result in a fundamental miscarriage of justice." *Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999). A "fundamental miscarriage of justice" is shown where "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Id.* at 917.

Gilmore has not provided sufficient explanation for not raising the additional claims on direct appeal. Additionally, Gilmore has not shown that he was wrongly convicted. *See*

-17-

*Howard*, 185 F.3d at 726. Gilmore has failed "to show that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez*, 193 F.3d at 917. Therefore, this Court is barred from reviewing Gilmore's additional claim regarding whether he was denied due process when the state sentenced him relying on allegedly inaccurate information. The Court further notes that the maximum potential penalties for Gilmore's crimes totaled ninety-two years. Gilmore received a sentence of fifty-four years.

Gilmore's fifth ground for relief is that he was denied due process by the seven year delay in the final adjudication of his direct appeal. As a result of the delay, Gilmore alleges that two material witnesses to the robbery cannot be located. In particular, Gilmore argues that police reports indicate that Veronica Shaw ("Shaw") and Malcolm Wilson ("Wilson") viewed two suspects fleeing the scene of the October 16th robbery. Gilmore contends Shaw described someone different than Gilmore and Wilson appeared reluctant to testify. Gilmore is essentially arguing that his trial counsel was ineffective because he contends that his attorney failed to investigate Shaw and Wilson and Gilmore is unable to present a defense in case of a retrial. Gilmore raised this issue in response to the no merit report filed by his appellate counsel. As previously discussed, the court of appeals found Gilmore's claim of ineffective assistance of counsel to be without merit. And as previously discussed, the court of appeals decision regarding Gilmore's claim of ineffective assistance of counsel is not contrary to or an unreasonable application of *Strickland*. The Wisconsin Court of Appeals noted that Gilmore lost his first appeal, however, Gilmore's petition for writ of habeas corpus was granted and his appellate right were reinstated. *Gilmore*, Petition, Ex. 2 at 5. Gilmore

-18-

was then provided the assistance of appellate counsel, who determined there were no meritorious issues for appeal and filed a no merit brief.

Moreover, Gilmore failed to establish or substantiate that the witnesses possessed evidence that was both material and favorable to the defense. The mere passage of time or some suggestion of speculative harm is not enough, Gilmore must make a showing of actual and substantial prejudice which requires Gilmore to present concrete evidence showing material harm. *See Wilson v. McCaughtry*, 994 F.2d 1228, 1234 (7th Cir. 1993). Gilmore fails to make the requisite showing.

Gilmore's final challenge to his conviction is that he received ineffective assistance from appellate counsel because his appellate counsel failed to file a merits brief raising the issues identified in this petition and instead filed a no merit report. Gilmore has not shown that the Wisconsin Court of Appeals failed to properly follow the no-merit procedures required by *Anders v. California*, 386 U.S. 738 (1967), as codified in Wis. Stat. § 809.32. *See McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429 (1988). In order to prevail, Gilmore must prove that the Wisconsin Court of Appeals acted contrary to, or unreasonably applied, the principles of *Anders v. California*. 28 U.S.C. § 2254(d)(1).

The United States Supreme Court in *Anders* set forth the procedures appointed appellate counsel must follow after counsel's review of the case leads to the conclusion that an appeal would be wholly frivolous. 386 U.S. at 744. *See also Penson v. Ohio*, 488 U.S. 75, 80 (1988). Appointed counsel must request permission to withdraw but that request must be accompanied by a brief discussing any issue that might be arguably meritorious. Counsel

-19-

must provide a copy of that brief to the indigent defendant who then may file a response thereto raising any issues he believes to be meritorious. The Wisconsin Court of Appeals must then examine those filings, as well as the entire record, to determine whether the appeal is wholly frivolous. If it agrees with counsel that the appeal is wholly frivolous, the court of appeals may allow counsel to withdraw and dismiss the appeal, or proceed to a decision on the merits. It if finds that any legal arguments presented are arguably meritorious, it must provide the indigent with the assistance of counsel to present the issue on appeal. *Anders*, 386 U.S. at 744. The process is codified in Wis. Stat. § 809.32.

The Wisconsin Court of Appeals adhered to the requirements of *Anders*. The thorough no merit report filed by appointed appellate counsel complies with *Anders*. Gilmore was then permitted to, and did, file a *pro se* response raising additional issues he believed to be arguably meritorious. The Wisconsin Court of Appeals carefully reviewed counsel's report, and Gilmore's *pro se* response, before agreeing with counsel that there were no arguably meritorious issues on appeal. The court went on to independently review the record on its own, as required by *Anders*, to determine whether there were any other arguably meritorious grounds for challenging the conviction. The court of appeals found none.

Gilmore makes no showing that anything appellate appointed counsel did violated *Anders*. Nor does he show that the Wisconsin Court of Appeals's review of his case violated *Anders*. Gilmore makes no showing that there was anything wrong with the no-merit review process and he has failed to meet his burden of proving that the Wisconsin Court of Appeals

-20-

acted contrary to, or unreasonably applied, *Anders v. California* when it upheld his conviction.

Gilmore raises an additional ground for relief in his Amended Petition for Writ of Habeas Corpus.[4]  Gilmore contends that he was denied due process when the state failed to turn over memo books of each police officer that testified.  The Wisconsin Court of Appeals made short shrift of this argument noting that following the preliminary hearing, Gilmore's defense counsel acknowledged receipt of the discovery packet provided by the prosecutor consisting of 105 pages.  At trial, a police detective testified that photocopies of his memo books were distributed to counsel the morning on the day he testified.  Morever, no objection was made regarding the lack of memo books.  *Gilmore*, Petition, Ex. 2 at 5.  The record reflects that Gilmore's argument that the state failed to turn over memo books is incorrect.  Furthermore, Gilmore is unable to demonstrate prejudice.  Gilmore is unable to prove that the Wisconsin Court of Appeals resolved this challenge in a manner that is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).

---

[4]Gilmore's Amended Petition for Writ of Habeas Corpus raises seven grounds for relief:  (1) denial of the Sixth Amendment right to counsel involving Gilmore's initial appeal; (2) denial of the Sixth Amendment right to be informed of the nature and causes of the accusations; (3) denial of the Sixth Amendment right to the effective assistance of trial counsel; (4) denial of due process when the state knowingly presented false evidence; (5) denial of due process when the trial court relied on inaccurate information at sentencing; (6) denial of due process due to the inordinate delay in the adjudication of Gilmore's direct appeal; and (7) denial of due process due to the failure of the state to turn over memo books.  The first six grounds for relief are essentially set forth in Gilmore's Petition for Writ of Habeas Corpus.  The seventh ground for relief is new, however, as discussed herein, this ground for relief lacks merit.

"Habeas relief must not be granted unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *Julian v. Bartley*, 495 F.3d 487, 492 (7th Cir. 2007). The state court's adjudication of Gilmore's claims does not meet this standard. In conclusion, the decisions of the state appellate court were neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Further, the state courts' adjudication of Gilmore's claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented. Therefore, Gilmore's petition for writ of habeas corpus is denied.

As a final matter, on July 22, 2009, Gilmore filed a Motion for Injunction. Gilmore states that on June 3, 2009, he was transferred to Wisconsin Secure Program Facility and that this transfer is contrary to Federal Rule of Appellate Procedure 23(a). Rule 23(a) of the Federal Rules of Appellate Procedure forbids transferring the custody of a prisoner during an appeal in his habeas corpus case without the approval of the appeal court. *See Lindstrom v. Graver*, 203 F.3d 470, 475 (7th Cir. 2000). Gilmore's petition is not before an appellate court and Rule 23(a) is not applicable.

Gilmore also seeks an order from this Court requiring the respondent to photo copy his legal materials, namely a Reply to Answer to Petition for Writ of Habeas Corpus, Motion

for Leave to Amend Petition for Writ of Habeas Corpus and Amended Petition for Habeas Corpus. Gilmore filed these pleadings on July 27, 2009. Therefore, Gilmore's request is denied as moot.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Gilmore's Petition for Writ of Habeas Corpus (Docket No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Gilmore's Motion for Injunction (Docket No. 39) is **DENIED**.

**IT IS FURTHER ORDERED** that Gilmore's Motion to Amend Petition for Writ of Habeas Corpus (Docket No. 41) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly.


Dated at Milwaukee, Wisconsin, this 4th day of August, 2009.

**SO ORDERED,**


*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**Chief Judge**